The decision below is hereby signed. Dated: June 30, 2005.

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

```
In re                          )
                               )
JAMES WYATT, III,              )   Case No. 04-01245
                               )   (Chapter 7)
          Debtor.              )
_____)
                               )
WILLIAM D. WHITE, TRUSTEE,     )
                               )
          Plaintiff,           )
                               )
     v.                        )   Adversary Proceeding No.
                               )   04-10087
WFS FINANCIAL INC.,            )
                               )
          Defendant.           )
```

DECISION RE DISMISSING ADVERSARY PROCEEDING

The court previously directed the plaintiff to show cause why this adversary proceeding ought not be dismissed for reasons set forth in an order to show cause in a similar proceeding. The plaintiff adopted the response filed to the order to show cause in the other proceeding. A final decision has now been entered in that other proceeding. McCarthy v. BMW of North America, Inc. (In re Dorton), 2005 WL 1459319 (Bankr. D.D.C. June 21, 2005) (copy attached). It compels the conclusion that

the complaint here must be dismissed as failing to state a claim upon which relief can be granted.  Accordingly, a judgment follows dismissing this adversary proceeding.

                                            [Signed and dated above.]
                                            S. Martin Teel, Jr.
                                            United States Bankruptcy Judge

Copies to: Office of United States Trustee; Kevin R. McCarthy, Esq.; WFS Financial Inc., 23 Pasterur, Irvine, CA 92618, Attention: Thomas Wolfe, President and CEO; WFS Financial Inc., P.O. Box 168048, Irving, TX 75016, Attention: Thomas Wolfe, President and CEO.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1459319
--- B.R. ---
**(Cite as: 2005 WL 1459319 (Bankr.D.Dist.Col.))**

Only the Westlaw citation is currently available.

United States Bankruptcy Court,
District of Columbia.
In re Philip Wayne **DORTON,** Debtor.
Kevin R. McCARTHY, Trustee, Plaintiff,
v.
BMW BANK OF NORTH AMERICA, Defendant.
No. 04-00151, 04-10028.

June 21, 2005.

Background: Chapter 7 trustee brought adversary proceeding to avoid, as preferential, the purchase-money security interest that debtor had granted in connection with his purchase of motor vehicle.

Holding: The Bankruptcy Court, Teel, J., held that transfer of purchase-money security interest in debtor's motor vehicle occurred, not less than 90 days prepetition when certificate of title was issued noting creditor's purchase-money security interest thereon, but on date debtor granted security interest and took possession of car outside 90-day preference period.
Proceeding dismissed.

[1] Bankruptcy k0

Transfer of purchase-money security interest in debtor's motor vehicle occurred, not less than 90 days prepetition when certificate of title was issued noting creditor's purchase-money security interest thereon, but on date debtor granted security interest and took possession of car, outside 90-day preference period; District of Columbia statute providing that notation on certificate of title was exclusive means of perfecting security interest in motor vehicle from time certificate was "outstanding" applied only from date certificate of title was issued, i.e., "outstanding," and before that time, lack of any statute addressing perfection of security interests in motor vehicles meant that purchase-money interest was continuously perfected from time it was granted pursuant to common law rule of "first in time, first in right." Bankr.Code, 11 U.S.C.A. § 547(e)(2)(A), (e)(3); D.C. Official Code, 2001 Ed. § 50-1202.

[2] Bankruptcy k0
Whether creditor took required steps to perfect its security interest in debtor's motor vehicle was question governed by District of Columbia law.

[3] Secured Transactions k0
Under District of Columbia law, priority of liens is governed by common law rule of "first in time, first in right," except where statute varies this common law rule.

[4] Automobiles k0
District of Columbia statute providing that notation on certificate of title is exclusive means of perfecting security interest in motor vehicle from time certificate is "outstanding" applies only from date certificate of title is issued; certificate of title is "outstanding," within meaning of certificate-of-title statute, when it has been issued and delivered or mailed by the Department of Motor Vehicles (DMV) to holder of first lien. D.C. Official Code, 2001 Ed. § 50-1202.

[5] Automobiles k0
District of Columbia statute providing that notation on certificate of title is exclusive means of perfecting security interest in motor vehicle from time certificate is "outstanding" imposes no requirement for perfecting security interest in motor vehicle prior to issuance of certificate of title. D.C. Official Code, 2001 Ed. § 50-1202.

[6] Secured Transactions k0
While the District of Columbia Uniform Commercial Code (UCC) may impose general requirements for perfection of security interests that alter common law rule of "first in time, first in right," if those requirements are not imposed with respect to particular security interest because the UCC looks to another statute, such as certificate-of-title law, to determine the perfection issue, then common law rule governs priority issue where the other statute itself imposes no additional requirements for perfection beyond attachment.

[7] Secured Transactions k0
Motor vehicles are property "subject to" certificate-of-title provision, so that security interest therein is specifically exempted from perfection requirements of Article 9 of the District of Columbia Uniform Commercial Code (UCC), even though no certificate of title is outstanding. U.C.C. § 9-311(a).

Kevin R. McCarthy for plaintiff.

Ronald G. DeWald for defendant.

OPINION REGARDING DISMISSAL OF ADVERSARY PROCEEDING

**TEEL**, Bankruptcy J.

***1** The plaintiff, Kevin R. McCarthy, is the trustee of the debtor's estate under chapter 7 of the Bankruptcy Code (11 U.S.C.). The defendant, BMW Bank of North America ("BMW"), holds a security interest in a motor vehicle in which the debtor, Philip Wayne Dorton, owned an interest (which became property of the estate). McCarthy seeks to avoid BMW's security interest in that estate property as a preference under 11 U.S.C. § 547(b), and seeks ancillary relief flowing from that avoidance. In a prior order denying McCarthy's motion for summary judgment, the court directed McCarthy to show cause why this adversary proceeding ought not be dismissed based on an analysis largely repeated below. McCarthy has not convinced the court that its prior analysis was in error.

The court concludes that BMW's security interest was continuously perfected, within the meaning of that term under 11 U.S.C. § 547(e)(1)(B), from the moment the debtor obtained possession of the car, first under the common law rule of first in time, first in right, and then, upon issuance of the certificate of title for the car, under D.C.Code § 50-1202 by reason of the security interest being noted on the certificate of title prior to its issuance. Accordingly, no preference existed in this case. The court rejects McCarthy's position that perfection only occurred once the security interest was noted on the certificate of title.

I

Except as noted, the pertinent facts are not in dispute. On October 13, 2003, the debtor and another individual signed a contract with an automobile dealer to purchase a car. As part of the contract, the co-owners executed a security agreement granting the dealer a security interest in the car to secure payment of the purchase obligation. The debtor took possession of the car on October 13, 2003.

The dealer assigned the contract to BMW. On behalf of BMW, the dealer applied to the District of Columbia Department of Motor Vehicles ("the DMV") for a certificate of title. [FN1] The application for the certificate of title listed BMW as the lien holder. BMW did not file a financing statement with the District of Columbia.

On December 24, 2003, more than 20 days after the debtor took possession of the car, the DMV issued a certificate of title for the car noting the security interest of BMW. The debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 30, 2004, which was less than 90 days after BMW's lien was noted on the certificate of title.

II

[1] BMW's security interest attached when the debtor granted the security interest on October 13, 2003, and took possession of the car on that date. [FN2] The court concludes below that BMW's security interest was continuously perfected from that moment. Accordingly, under 11 U.S.C. § 547(e)(1)(B), (2)(A), and (3), the transfer of the security interest occurred on October 13, 2003. Section 547(e)(1)(B) provides:

> a transfer of ... property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee[.]

***2** Under § 547(e)(2)(A) and (3), as relevant here:

> a transfer is made ... at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time ... [and] the debtor has acquired rights in the property transferred.

October 13, 2003, was more than 90 days before the filing of the petition commencing the bankruptcy case. Accordingly, an avoidable transfer does not exist because the transfer was not "made ... on or within 90 days before the date of the filing of the petition" as required by § 547(b)(4)(A) in the case of a transfer other than one to or for the benefit of a creditor who was an insider. McCarthy has not alleged that BMW (or the dealer who assigned the security interest to it) was an insider.

[2] McCarthy contends that perfection of BMW's security interest only occurred when the certificate of title was issued. [FN3] Whether or not BMW took any required steps to perfect its security interest as of the delivery of the vehicle to the debtor on October 13, 2003, is a question that rests on state law. *Fidelity Financial Services, Inc. v. Fink,* 522 U.S. 211, 213 n. 1, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998). The court thus turns to District of Columbia law.

III

[3] By reason of the definition of perfection in § 547(e)(1)(B), BMW's security interest was perfected only once it was entitled to priority against a hypothetical subsequent judicial lien. As a matter of

District of Columbia law, it is "axiomatic that a prior lien gives a prior legal right ('first in time, first in right'), except where statute varies the common law rule." *District of Columbia v. Franklin Inv. Co.,* 404 A.2d 536, 540 (D.C.1979) (emphasis added; citations omitted). [FN4]

McCarthy does not dispute that BMW acquired a security interest in the car at the time of its sale and delivery to the debtor. Two statutory schemes govern the perfection and priority of security interests in motor vehicles, and may alter the common law rule, namely, the District's certificate of title statute (D.C.Code § 50-1201 *et seq.*) ("Liens on Motor Vehicles or Trailers") and the District's Uniform Commercial Code. [FN5]

### IV

Turning first to the certificate of title statute, D.C.Code § 50-1202 provides in pertinent part:
> During the time a certificate is outstanding for any motor vehicle ..., no lien against such motor vehicle ... shall be valid except as between the parties and as to other persons having actual notice, unless and until entered on such certificate as hereinafter set forth .... The filing provisions of Article 9 of [the UCC] do not apply to liens recorded as herein provided, and a lien has no greater validity or effect during the time a certificate is outstanding for the motor vehicle or trailer covered thereby by reason of the fact that the lien has been filed in accordance with that article.

[Emphasis added.] Accordingly, once the certificate of title issued, BMW's lien was effective against a subsequent judicial lien because BMW's lien was noted on the certificate of title. In the period prior to the issuance of the certificate, (1) no certificate of title was outstanding, and (2) the certificate of title statute imposed no rule altering the common law rule of priority.

#### 1.

*3 [4] The certificate of title was "outstanding" only once it issued. The term "outstanding" is not defined in § 50-1202. However, § 50-1206 contemplates, as relevant here, that only after the application is examined for correctness and various fees and taxes are paid, "[t]he Director [of the DMV] shall thereupon issue the certificate ...." and the Recorder of Deeds then "shall enter the lien information on [the] certificate ...." Only once that is accomplished, § 50-1206 provides, "the Director [of the DMV] shall deliver or mail the certificate to the record holder of the 1st lien shown thereon or his representative ...." [FN6] The court concludes that a certificate is "outstanding" when it has been issued and delivered or mailed by the DMV to the holder of the first lien. Thus, no certificate of title was outstanding here until the DMV mailed or delivered the certificate to BMW.

This conclusion is unaltered by UCC § 9-303(b) which provides:
> (b) Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.

The term "covered by a certificate of title," as defined in § 9-303(b), is a term of art employed in other provisions addressing such matters as which jurisdiction's law governs perfection (§ 9-303(c)) and the time period during which perfection may be achieved by taking possession (§ 9-313(b)). The term is not the same thing as a certificate of title being "outstanding" as is made evident by UCC § 9-303, Comment 6 ("External Constraints on This Section") which states in relevant part:
> Ideally, at any given time, only one certificate of title is outstanding with respect to particular goods. In fact, however, sometimes more than one jurisdiction issues more than one certificate of title with respect to the same goods.

[Emphasis added.] This comment makes clear that the term "outstanding" refers to when a certificate has been issued and is in the hands of the public, an event external to the rules UCC § 9-303 adopts regarding goods being covered by a certificate of title. The term "outstanding" does not refer to the technical issue of when goods "become covered by a certificate of title" for purposes of determining such issues as which jurisdiction's law controls perfection. [FN7]

#### 2.

[5] Section 50-1202 itself imposes no requirement for perfecting a lien prior to issuance of a certificate of title. Accordingly, unless another statute alters the common law rule of first in time, first in right, BMW's security interest was perfected in the § 547(e)(1)(B) sense pursuant to the common law rule upon attachment of the security interest and until issuance of the certificate of title. The court turns to the UCC to determine whether it alters the common law rule.

### V

*4 UCC article 9 ("Secured Transactions") (UCC § 9-101 *et seq.*) applies to a security interest created by

an individual debtor in a motor vehicle. [FN8] Among other topics with respect to security interests, article 9 addresses the priority of security interests over judicial liens. With respect to the relative priority of a security interest and a lien creditor's rights (which include those of a judicial lien as described by § 547(e)(1)(B)), [FN9] UCC § 9-317(a) provides in relevant part:

>   (a) A security interest ... is subordinate to the rights of:
>
>   ...
>
>   (2) Except as otherwise provided in subsection (e), a person that becomes a lien creditor before the earlier of the time:
>
>   (A) The security interest ... is perfected[.]

The court concludes below that from the moment the debtor took possession of the car, BMW's security interest was "perfected" as that term is used in the UCC--one of the UCC ways for a security interest to attain priority over a judgment lien--and hence was "perfected" as that term is used in § 547(e)(1)(B). [FN10]

### A.

[6] The term "perfected" under the UCC is addressed by UCC § 9-308 which provides in relevant part:

>   (a) Except as otherwise provided in this section and § 28:9-309, a security interest is perfected if it has attached and all of the applicable requirements for perfection in §§ 28:9-310 through 28:9-316 have been satisfied....

[Emphasis added.] McCarthy argues that:

>   The exceptions referred to in D.C. § 29-308(a) do not apply here. Therefore, the section necessarily means that the only way to perfect a security interest in the Debtor's car is to comply with the applicable perfection requirements in sections 9-310 through 9-316. In other words, there is no room within this language for the common law to provide an alternative way to perfect a security interest in a car.
>
>   However, if §§ 9-310 through 9-316 impose no "applicable requirements for perfection," the security interest is perfected once it has attached: in other words, the UCC retains the common law rule of first in time, first in right in that rare circumstance. As *Malakoff,* 434 A.2d at 434, indicates:
>
>>   The Uniform Commercial Code (UCC), effective in the District of Columbia on January 1, 1965, preserves this common-law principle [of first in time, first in right], but refines it through the general rule that a party who first notifies the public of his security interest in a particular piece of property, either through possession of the collateral or filing of his financing statement (so-called "perfection"), prevails over all other parties with a security interest in the same collateral, regardless of which party first acquired the security interest itself (so-called "attachment").

[Emphasis added; citation omitted.] The UCC may have general requirements for perfection that alter the common law rule, but when, as here, those requirements are not imposed with respect to a particular security interest because the UCC looks to another statute to determine the perfection issue, the common law rule supplies the priority rule if the other statute itself imposes no additional requirements for perfection beyond attachment.

**\*5** As will be seen, the UCC imposes only the requirements of § 50-1201 *et seq.* for perfection of a security interest in a motor vehicle, and makes inapplicable the UCC requirements for perfection (beyond attachment of the security interest to the collateral) that would otherwise apply. As already noted in part IV, § 50-1201 *et seq.* impose no requirement for perfection when no certificate of title is outstanding, and the common law rule of first in time, first in right thus controls priority until a certificate of title is issued. Thus, BMW's security interest was perfected upon attachment and until issuance of the certificate of title.

### B.

UCC § 9-310 sets forth a general rule that filing of a financing statement is necessary to achieve perfection, and exceptions to that rule. UCC § 9-310 provides in relevant part:

>   (a) Except as otherwise provided in subsection (b) and § 28:9-312(b), a financing statement must be filed to perfect all security interests ....
>
>   (b) The filing of a financing statement is not necessary to perfect a security interest:
>
>   ...
>
>   (3) In property subject to a statute, regulation, or treaty described in § 28:9-311(a)[.]

In turn, UCC § 9-311(a) states that "the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to: ... (2) the provisions of section 50-1201 *et seq.*" Motor vehicles are among the species of property subject to the provisions of § 50-1201 *et seq.*, and, accordingly, filing of a financing statement is not required (or effective) to perfect a security interest in a motor vehicle. UCC § 9-311(b) provides in relevant part:

>   Compliance with the requirements of a statute ... described in subsection (a) for obtaining priority over the rights of a lien creditor is equivalent to the filing of a financing statement under this article. Except as otherwise provided in subsection (d) and

§ 28:9-313 and 28:9-316(d) and (e) for goods covered by a certificate of title, a security interest in property subject to a statute ... described in subsection (a) may be perfected only by compliance with those requirements ....
[Emphasis added.]

As discussed next, (1) § 9-311 applies to motor vehicles even when no certificate of title is outstanding; (2) the existence under UCC 9-311(b) of possession as an alternative means of perfection (beyond compliance with requirements for perfection under § 50-1201 *et seq.*) does not make taking possession a requirement for perfection when all requirements for perfection under § 50-1201 *et seq.* have been taken; (3) the only such requirement under § 50-1201 *et seq.*, as incorporated by the UCC, in the period prior to issuance of the certificate of title is the common law requirement that the security interest have attached prior to the competing lien; and (4) nothing in Comment 5 to UCC § 9-311 alters this result.

1.

[7] Motor vehicles are property "subject to" the provisions of § 50-1201 *et seq.*, within the meaning of UCC § 9-311(a), even when no certificate of title is outstanding. In *McCarthy v. Imported Cars of Md., Inc. (In re Johnson),* 230 B.R. 466 (Bankr.D.D.C.1999), the parties failed to address the issue, and the court assumed that, because § 50-1202 sets forth perfection requirements when a certificate of title *is* outstanding, a security interest in a motor vehicle could be (and had to be) perfected by filing a financing statement under the UCC when a certificate of title *is not* outstanding. *Johnson,* 230 B.R. at 470. That was an erroneous reading of § 9-311(a). Although § 50-1202 sets forth a perfection requirement of noting a lien on a certificate of title whenever a certificate of title *is* outstanding, a motor vehicle is nevertheless "property subject to § 50-1201 *et seq.*" within the meaning of UCC § 9-311(a)(2) even when a certificate of title *is not* outstanding. This is demonstrably the correct interpretation of § 9-311(a)(2) because § 50-1206 requires inclusion of lien information on an application for a certificate of title, and that obviously occurs before issuance of a certificate of title.

2.

**\*6** The propriety of focusing on perfection under § 50-1201 *et seq.* is unaltered by the exceptions to § 9-311(b) set forth in its concluding sentence. Those exceptions, §§ 9-311(d), 9-313, and 9-316(d) and (e), have no relevance here. UCC § 9-311(d) only applies to goods held as inventory. The remaining exceptions address perfection by way of possession. Even if perfection could be achieved by possession, [FN11] the UCC does not require such a step to achieve perfection of a security interest in a motor vehicle: it suffices to comply with whatever requirements the certificate of title statute imposes for perfection.

Under the UCC, possession is generally an alternative to the requirement of filing a financing statement when filing would otherwise be required, and it is an alternative as well to compliance with whatever perfection requirements the certificate of title statute imposes, but it is not mandatory. The only instances in which possession is mandatory to achieve perfection are of no relevance here. [FN12]

3.

McCarthy notes that Eldon H. Riley, in 1 *Security Interests in Personal Property* § 15:1 (Westlaw 2002), describes § 9-311 as "indicating that compliance with state certificate of title laws is the exclusive method of perfection" except in certain instances where a vehicle is inventory or in the secured party's possession. McCarthy then argues that "[b]y engrafting a common law method of perfection [of a security interest] in a car onto the Uniform Commercial Code, the Court has gone outside the UCC and the DMV statute," and "the common law method of perfection is nowhere to be found in Sections 9- 310 through 9-316," the provisions that UCC § 9-308(a) points to as governing when perfection occurs.

If § 50-1201 *et seq.* are treated as the controlling statute regarding perfection once a security interest has attached (and they are so treated by UCC § 9-311(b)), McCarthy's argument must fail. [FN13] As discussed in part IV, *Franklin Inv. Co.,* 404 A.2d at 540, holds that the common law rule of "first in time, first in right" controls "except where statute varies the common law rule," and § 50-1201 *et seq.* do not purport to vary the common law rule during the period prior to issuance of a certificate of title.

Even if § 50-1201 *et seq.* are treated as incorporated into the UCC, with the UCC treated as the controlling statute, the UCC itself follows the *Franklin Inv. Co.* approach: UCC § 1-103 provides that "[u]nless displaced by the particular provisions of this subtitle, the principles of law and equity ... shall supplement its provisions." Thus, except when displaced by a particular provision of the UCC, the common law principle of "first in time, first in right" continues to answer which lienor takes priority. In the case of

security interests in cars, the UCC, with exceptions of no relevance here, leaves the question of priority over a judgment lien to § 50-1201 *et seq.* Those provisions, in turn, do not displace the common law rule of "first in time, first in right" in the period prior to the issuance of a certificate of title. Accordingly, the common law rule supplies the answer during that period.

***7** McCarthy's argument can fairly be recast as follows:
> Prior to issuance of the certificate of title, BMW failed to comply with the only express requirement for perfecting a security interest in a car (applicable only when a certificate of title is outstanding) of noting the security interest on the certificate of title. Therefore, BMW did not comply with the requirements of § 50-1201 *et seq.* prior to issuance of the certificate of title, and had no perfected security interest until the certificate of title issued.

Section 50-1201 could have *expressly* provided that prior to issuance of a certificate of title, to take priority over a judicial lien a security interest must have satisfied the common law requirement that it attached first in time to the car. If the statute had expressly so provided, McCarthy would be unable seriously to contend that BMW had failed to comply with the certificate of title statute's perfection requirements. Instead, by not displacing the common law rule and leaving it intact, § 50-1201 *et seq.* *implicitly* provide that prior to issuance of a certificate of title, the only required step to perfect a security interest in a car is the common law requirement. Compliance with the common law requirement, whether expressly or implicitly set forth by § 50-1201 *et seq.,* constitutes compliance with the requirements of those statutory provisions. Accordingly, the security interest was perfected under UCC § 9-311(b) by reason of complying with the common law requirement.

This analysis is reinforced by the certificate of title statute's letting the common law rule play a role in governing perfection against subsequent judicial liens even after issuance of a certificate of title. Like the federal tax lien statute (26 U.S.C. § 6323(a)), § 50-1202 of the D.C. certificate of title statute uses the term "valid" to address the issue of priority against a subsequent judgment lien. [FN14] Once a security interest is noted on the outstanding certificate of title, it is "valid ... as to other persons" including a holder of a judgment lien, but that does not answer the issue of priority over a judgment lien arising after such notation of the security interest: the common law obviously provides the answer--the lien that first became valid prevails.

### 4.

McCarthy argues that Comment No. 5 to UCC § 9-311 demonstrates that his analysis is correct. Comment No. 5 states:
> [S]tatutes under which perfection *does not occur until a certificate of title is issued* will create a gap between the time that the goods are covered by the certificate under Section 9-303 and the time of perfection. If the gap is long enough, it may result in turning some unobjectionable transactions into avoidable preferences under Bankruptcy Code Section 547. (The preference risk arises if more than 10 days (or 20 days, in the case of a purchase-money security interest) passes between the time a security interest attaches (or the debtor receives possession of the collateral, in the case of a purchase-money security interest) and the time it is perfected.

***8** [Italics added.] The Comment goes on to recommend a legislative amendment to the certificate of title statute providing for perfection to occur upon receipt of the application for a certificate of title. McCarthy argues that there has been no such amendment, and that the court should not disregard the plain provisions of the UCC requiring compliance with the requirements of § 50-1201 *et seq.* as currently written. However, Comment No. 5 simply is inapplicable to the District of Columbia statute, as under § 50-1201 *et seq.,* perfection *does* occur prior to the issuance of a certificate of title.

### 5.

McCarthy finally argues that under the court's common law perfection approach, there is no apparent time limit in which a secured party must apply for a certificate of title, let alone have it issued, in order to receive preference protection, and that a lender would never have an incentive to submit an application for a certificate of title in order to protect its security interest against subsequent judicial liens or security interests.

Although none are identified by McCarthy, the court will assume that there are reasons why a state would want a certificate of title to be issued promptly after completion of a sale of a motor vehicle. It thus might be sound policy to encourage prompt applications for certificates of title by requiring filing of such an application in order to perfect a security interest in a motor vehicle, which would have the effect of displacing the common law rule. However, the existence of policy grounds for a legislature to elect to displace the common law rule does not equate with an

actual act of displacing the rule. Moreover, McCarthy's argument disregards District of Columbia statutory provisions which encourage prompt filing of an application for a certificate of title. [FN15]

### VI

As discussed above, BMW's security interest attained perfected status upon the debtor's acquiring the motor vehicle and until the issuance of the certificate of title. Once the certificate of title issued, BMW's security interest was perfected under § 50-1201 by way of being noted on the certificate of title prior to its issuance. Accordingly, BMW has had a continuously perfected security interest from the moment title passed to the debtor. *See* UCC § 9- 308(c) ("A security interest ... is perfected continuously if it is originally perfected by one method under this article and is later perfected by another method under this article, without an intermediate period when it was unperfected."). The term "method" is sufficiently broad to include perfection via being first in time and entitled to priority under the common law rule when that rule has not been displaced.

### VII

McCarthy could argue that once the certificate of title was outstanding, only notation of the security interest on the certificate of title could perfect the security interest, and that because that occurred within 90 days of the filing of the petition a preferential transfer occurred, and the notation occurred more than 20 days after the debtor obtained possession of the vehicle, § 547(c)(3) cannot be deemed applicable. In other words, the issue remains whether § 9-308(c) amounts to an impermissible retroactive perfection provision under *Fink,* 522 U.S. at 220.

**\*9** *Fink* does not apply here. *Fink* dealt with a case in which there was a period of time when, under state law, the security interest was not perfected and a judicial lien could have been obtained against a motor vehicle, and the later perfection of the lien beyond the 20-day mark of § 547(c)(3) could not bring the security interest into the safe harbor of § 547(c)(3) via the state law's provision for retroactive effectiveness of the perfection. Here, in contrast, there never was a period when the security interest was not perfected. At every step, BMW's security interest was perfected and BMW had taken steps to assure that it would remain perfected. Its security interest is thus not avoidable as a preference. *See Blasbalg v. Tarro (In re Hyperion Enters., Inc.),* 158 B.R. 555, 565-66 (D.R.I.1993).

Had BMW allowed that perfection to lapse, by not causing the security interest to be noted on the certificate of title when it first issued, a different case would be presented. [FN16] However, here there was never any such lapse in perfection.

### VIII

States tend to have one of three statutory arrangements for using certificate of title statutes to perfect security interests in vehicles. *In re Farnham,* 57 B.R. 241, 245 (Bankr.D.Vt.1986). The "indication," "delivery," and "dual" schemes are as follows:

> Presently, twenty-two states and the District of Columbia have enacted certificate of title systems that make the perfection event either the indication of the lien or the certificate of title or the issuance of the certificate of title after indication. Twenty-four states have certificate of title laws that make mere delivery of the appropriate papers and fees to the proper officer the act of perfection, even if the certificate of title is never noted or issued.... Finally, three states have "dual system" certificate of title perfection laws that require both the filing of a financing statement and the use of the certificate of title.

*Id.* at 245 (citing Note, *Secured Transactions: Certificate of Title-- Delivery or Notation? The Lender's Dilemma,* 37 Okla. L.Rev. 618, 622 (1984) (footnotes omitted)).

There are decisions under other state statutes adopting an *exclusively* "indication" means of perfection which would support McCarthy's position here if the District's statute were of the same character. In *Union Bank & Trust Co., Erie v. Baker (In re Tressler),* 771 F.2d 791 (3rd Cir.1985), the court dealt with a Pennsylvania motor vehicle statute which provided in what the court of appeals characterized as unambiguous language that "[a] security interest is perfected by notation thereof by the department on the certificate of title for the vehicle" and another provision of the motor vehicle statute provided that the method thereby provided for perfecting a security interest was exclusive. The court of appeals offered this colorful language:

> We are unpersuaded by the bank's argument that the Department's lack of efficiency in issuing titles should somehow provide the basis for an exception to the federal 10 day perfection requirement [in an earlier version of the Bankruptcy Code]. The solution to this problem, if such a problem indeed exists, should be pursued in Harrisburg by seeking appropriate legislative action, rather than by seeking, in this court, an exception to the clear congressional command in § 547(c)(3)(B).

**\*10** *Tressler,* 771 F.2d at 793. [FN17] If the

District's motor vehicle statute were identical to the statute involved in *Tressler* or to the Tennessee statute involved in several decisions reaching a similar conclusion, [FN18] the court would unhesitatingly follow that decision, and reject BMW's argument that *Huenekens v. Abruzzese (In re Abruzzese),* 252 B.R. 341 (Bankr.E.D.Va.1999), requires disregard of a plainly written statute making notation the exclusive means of perfection.

However, the Pennsylvania statute at issue in *Tressler* and the Tennessee statute just mentioned, are distinguishable from the District's certificate of title statute which purports only to set requirements for perfection when a certificate of title is outstanding. Prior to issuance of the certificate of title, the District's statute does not proscribe perfection via the common law rule.

## IX

A judgment follows dismissing this proceeding.

> FN1. McCarthy questions when the application was filed, but the outcome is the same regardless of when the application was filed.
>
> FN2. The security interest was created in the same contractual document in which the debtor agreed to pay for the car. However, the security interest attached, and thus the transfer to BMW of the security interest became effective between BMW and the debtor, only once the debtor had rights in the collateral, which was upon delivery of the car to the debtor. *See McCarthy v. Imported Cars of Md., Inc. (In re Johnson),* 230 B.R. 466, 468-69 (Bankr.D.D.C.1999).
>
> FN3. Whether addressed in the context of § 547(b)(4)(A) (no transfer within 90 days of the petition) or § 547(c)(3) (an exception to § 547(b) requiring perfection within 20 days of the debtor's taking possession of the car), the critical issue is whether perfection only occurred when the certificate of title issued. The parties' initial papers in this proceeding focused on § 547(c)(3). The 20-day mark under § 547(c)(3) was November 2, 2003, less than 90 days prior to the filing of the petition on January 30, 2003. However, § 547(c)(3)--as an exception to § 547(b)-- becomes irrelevant in light of the court's conclusion that perfection, and hence transfer, of the security interest occurred more than 90 days before the filing of the petition such that § 547(b) does not apply.
>
> FN4. *See also Malakoff v. Washington,* 434 A.2d 432 (D.C.1981); *District of Columbia v. Hechinger Properties Co.,* 197 A.2d 157, 160 (D.C.1964); *United States v. McDermott,* 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993) (applying the same as federal common law rule); *United States v. New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954) (same).
>
> FN5. The District of Columbia's Uniform Commercial Code ("UCC" or, when necessary to distinguish the District of Columbia UCC from other states' versions, "D.C. UCC") is found at D.C.Code Ann. § 28:1-101 *et seq.* (with its provisions hereafter cited as UCC § 1-101, and so forth).
>
> FN6. In turn, § 50-1209 contemplates that the Recorder of Deeds may require the person holding the certificate to "surrender" it when necessary to note a new lien or an assignment of lien on the certificate.
>
> FN7. In *Albert v. Nissan Motor Acceptance Corp. (In re Waiters),* Civil Action No. 02-01588 (D.D.C. July 12, 2004), the district court assumed, without any analysis, that when a car becomes "covered by a certificate of title" a certificate of title is "outstanding." The court rejects that conclusion based on the foregoing analysis. In responding to that analysis as set forth in the court's earlier decision, McCarthy states that he "tends to agree more with the Bankruptcy Court's view that a certificate is not outstanding until issued than with the District Court's apparent view that a certificate can be outstanding before issued." McCarthy's Memorandum Responding to Court's Order at 6-7.
>
> FN8. UCC § 28:9-109 provides in relevant part:
> (a) Except as otherwise provided in subsections (c) and (d), this article applies to:
> (1) A transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract;
> ... None of the exceptions in subsections (c) and (d) apply to a security interest created by

an individual debtor in a motor vehicle.

FN9. UCC § 9-317 uses the term "lien creditor" but this includes a judicial lien creditor. *See* UCC § 9-102(52)(A) (defining "lien creditor" as including "[a] creditor that has acquired a lien on the property involved by attachment, levy, or the like") and thus is broad enough to include the type of judicial lien addressed by § 547(e)(1)(B).

FN10. The UCC has alternative means--beyond UCC "perfection"--for attaining priority over a judgment lien (and hence for attaining "perfection" in the § 547(e)(1)(B) sense). *See, e.g.,* UCC §§ 9- 317(a)(2)(B) and § 9-317(e). But BMW does not rely on any of those alternative means of attaining priority.

FN11. Once BMW applied for a certificate of title, it is debatable whether it could have perfected its security interest by taking possession. *See* UCC §§ 9-303(b), 9-313(b), and 9-316(d) which suggest that once an application for a certificate of title is filed, perfection via possession is relevant only when a certificate of title is applied for in the District after the security interest was already perfected under the laws of another state. However, there is a factual dispute as to when BMW filed the application.

FN12. UCC § 9-312(b)(3) specifies possession to be the only means of perfecting a security interest in money. UCC § 9-316(e), dealing with perfection against a purchaser of goods that have become covered by a certificate of title in a new state without the security interest being perfected under the new state's certificate of title statute, requires possession to perfect.

FN13. The certificate of title statute never specifically uses the term "perfection" but the Comment to UCC § 9-311 clarifies what "perfection" under the certificate of title statute entails:
5. Compliance with Perfection Requirements of Other Statute. Subsection (b) makes clear that compliance with the perfection requirements (i.e., *the requirements for obtaining priority over a lien creditor),* but not other requirements, of a statute ... described in subsection (a) is sufficient for perfection under this Article. Perfection of a security interest under such a statute ... has all the consequences of perfection under this Article.
[Italics added.]

FN14. The statute expressly uses the term priority only in addressing the priority of certain liens other than judicial liens. The statute excludes a judicial lien (or, to quote the statute, a "lien acquired in any judicial proceeding") from the definition of "lien." *See* D.C.Code § 50- 1201(f)(2) (including security interests in definition of "lien" but excluding judicial liens). The statute then addresses the priority of liens (that is, such liens as security interests but *not* judicial liens) in D.C.Code § 50-1203.

FN15. D.C.Code § 50-1501.2(c)(3) provides that registration of a motor vehicle in the District requires that the owner have a valid certificate of title, and D.C.Code § 50-1501.04, with an exception for a "special use certificate" (and other exceptions of no relevance here), makes it unlawful to operate a motor vehicle if it is not registered. While the owner may temporarily operate the vehicle pursuant to a "special use certificate" and "special use identification tags" under D.C.Code § 50- 1501.02(5)(A), those are restricted to a 30-day duration. Accordingly, the statutory scheme has built-in incentives for a certificate of title to be applied for promptly.

FN16. *See Anderson v. Blackman (In re Karisda, Inc.),* 90 B.R. 196 (Bankr.D.S.C.1988) (lapse in perfection due to expiration of financing statement without filing of continuation statement; filing of second financing statement within 90 days before petition date was a preferential transfer). *But see* David Gray Carlson, *Security Interests in the Crucible of Voidable Preference Law,* 1995 U. Ill. L.Rev. 211, 232-34.

FN17. Not surprisingly, in 1990 the Pennsylvania legislature amended its code to create a "delivery" statute to prevent this dangerous gap in time. *See* 75 Pa. Cons.Stat. Ann. § 1132(b); *First Nat'l Bank of Penn. v. Cech (In re Ambrose),* 148 B.R. 244, 247 (Bankr.W.D.Pa.1992).

FN18. *See Waldschmidt v. Smith (In re York),* 43 B.R. 36 (Bankr.M.D.Tenn.1984) (no perfection in absence of notation of the lien on the title even if a properly submitted application is lost by officials of the State of Tennessee and the applicant is blameless); *Walker v. Ford Motor Credit Co. (In re Clark),* 112 B.R. 226, 230 (Bankr.E.D.Tenn.1990) (no relation back if application has been rejected); *Keep Fresh Filters, Inc. v. Reguli,* 888 S.W.2d 437, 445 (Tenn.Ct.App.1994) ("Merely submitting an application or a certificate of title or to note a lien on a certificate of title does not result in perfection of a security interest if the filing does not lead to a recordation of the lien on the title.").

2005 WL 1459319 (Bankr.D.Dist.Col.)

END OF DOCUMENT