**The document below is hereby signed.  Dated: November 16, 2010.**



**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JAMES WYATT, III, | ) | Case No. 04-01245 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM D. WHITE, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 04-10087 |
| WACHOVIA DEALER SERVICES, | ) | |
| INC., formerly known as WFS | ) | **For Publication in West's** |
| FINANCIAL, INC., | ) | **Bankruptcy Reporter** |
| | ) | |
| Defendant. | ) | |

MEMORANDUM DECISION AND ORDER
ADDRESSING CROSS-MOTIONS FOR SUMMARY JUDGMENT

If a lienholder has no right to pursue payment of the debt
secured by its lien as a personal obligation of the debtor, and
the debtor pays the debt to avoid loss of the collateral, the
result is this: the value of the lien has proven to be the amount
of the payments made on account of that lien even though the lien
would have fetched less had the collateral been liquidated.  As a
consequence, the plaintiff White, as the successor via his

avoidance powers to the defendant Wachovia's lien rights, is entitled to recover the postpetition payments the debtor Wyatt made on account of Wachovia's lien, which secured payment of a monetary obligation that the intervention of bankruptcy barred Wachovia from enforcing as a personal liability of Wyatt.

I

The plaintiff William D. White, the trustee in the debtor Wyatt's case under chapter 7 of the Bankruptcy Code (11 U.S.C.), commenced this adversary proceeding against WFS Financial Inc., now known as Wachovia Dealer Services, Inc.  For ease of discussion, I will refer to WFS as Wachovia as though that had been its name all along.

By his complaint, White sought to set aside as a voidable transfer under 11 U.S.C. § 547(b) Wyatt's grant of a security interest in his truck to Wachovia, to preserve the avoided security interest for the benefit of the estate, to recover all postpetition payments made by Wyatt to Wachovia on account of the security interest, and to sell the vehicle free and clear of Wachovia's security interest and keep the sale proceeds as property of the estate.  White does not seek to recover the prepetition payments made to Wachovia, presumably because the payments, even if made on account of an unsecured debt, would fit within the 11 U.S.C. § 547(c)(2) exception to the avoidability of the payments under § 547(b).

2

The parties filed cross-motions for summary judgment. The only real issue remaining is whether, as a matter of law, White is entitled to recover the postpetition payments Wyatt made to Wachovia prior to White's selling the vehicle. The court will grant summary judgment in favor of White for the following reasons.

## II

The facts not genuinely in dispute are as follows. On June 1, 2004, Wyatt purchased a motor vehicle, a Chevrolet Tahoe truck, from Pohanka Imports, Inc., and Wyatt took possession of the truck the same day. On June 1, 2004, Wyatt executed a Contract and Security Agreement with Pohanka, which provided purchase money financing for the truck and contained a grant of a purchase money security interest in the truck securing Wyatt's obligation to pay amounts that were to come due under the contract. The Contract and Security Agreement was duly assigned to Wachovia, and the District of Columbia Certificate of Title reflects Wachovia as the lienholder. The Certificate of Title identifies the date of issuance as July 2, 2004. Under the Contract, Wyatt was required to make payments to Wachovia of $572.98 per month beginning on July 16, 2004.

Wyatt filed for protection under chapter 7 of the Bankruptcy Code on August 16, 2004. The parties agree that under *McCarthy v. BMW Bank of North America*, 509 F.3d 528 (D.C. Cir. 2007),

3

perfection of Wachovia 's security interest occurred upon the District of Columbia's issuance of the certificate of title to the truck, and that the date of perfection was too late for the transfer of the lien to be exempt under 11 U.S.C. § 547(c)(3) from White's § 547(b) avoidance powers. The resolution of this adversary proceeding was stayed pending the resolution of *BMW* first at the bankruptcy court level (where the *BMW* litigation began in 2004), then at the district court level, and finally at the court of appeals level.

The principal balance of the loan as of the petition date was $24,779.98. Pending the resolution of *BMW*, and until White sold the truck, Wyatt continued to tender postpetition payments to Wachovia totaling $22,508.38 exclusive of force-placed insurance payments, which Wachovia also received as an agent.[1] As established by Wyatt's affidavit, Wyatt made those postpetition payments to Wachovia with the intention of reducing

---

[1] Even though the payments were only $2,271.60 less than the principal balance of the loan as of the petition date, the payments included interest, and, accordingly, the outstanding balance was not reduced to $2,271.60. For example, on December 1, 2007, the principal balance owed on the truck loan was $10,781.80.

4

the amount of debt secured by Wachovia's lien on the truck.[2]

The allowed proofs of claim filed in this case exceed $15,000 and do not include any claim by Wachovia.  Other than this cause of action, the bankruptcy estate has no non-exempt assets.  Pursuant to an order entered on April 16, 2008, in the main case, White sold the truck to Wyatt free and clear of Wachovia's lien, but with White to hold a lien securing Wyatt's "future post-petition payments to the Trustee subject to the same contractual terms that originally existed between him and Wachovia."  Accordingly, White seeks the amounts due under the lien that were paid to Wachovia postpetition and to collect as well (pursuant to the terms of the sale) the remaining amounts that would have been due under Wachovia's lien.  At the hearing on the cross-motions for summary judgment, White indicated that he had already sold the truck to Wyatt.  Because the parties agree that Wachovia's security interest is avoidable, there was

---

[2]  Wyatt's affidavit was offered in support of White's reply brief (Dkt. No. 34).  In light of White's failure to include the affidavit with his original summary judgment motion, counsel for Wachovia initially argued at the hearing on the cross-motions for summary judgment that Wachovia ought to have an opportunity to depose Wyatt to ascertain if Wyatt did, in fact, intend for postpetition payments to reduce the debt secured by the lien, as stated in the affidavit.  Following a discussion of whether such a deposition was likely to yield contradictory testimony from Wyatt, Wachovia ultimately elected not to depose Wyatt.  Counsel for Wachovia did, however, assert a relevance objection to the affidavit, raising the contention (which this decision rejects) that as a matter of law White is not entitled to recover the payments regardless of why Wyatt made the payments.  That objection is overruled.

no dispute that the estate was entitled to retain the related
sale proceeds free and clear of Wachovia's security interest.
White takes the position that he is entitled to recover the
postpetition payments to Wachovia as proceeds of the avoided
lien; Wachovia takes the position that, regardless of the value
of the truck on the petition date, White is not entitled to
recover any of the $22,508.38 in payments on the debt that stood
at $24,779.98 on the petition date.[3]

                                III

      White has established that Wyatt's transfer to Wachovia of a
security interest in the truck constitutes a transfer avoidable

---

      [3]  The parties have presented no evidence regarding the
value of the truck on the petition date (less than three months
after Wyatt purchased the truck).  White represents that Wyatt
made a $5,000 downpayment on the truck.  If so, it would appear
that the truck had substantial value on the petition date, but I
will assume in Wachovia's favor (without deciding) that the truck
was worth less than the debt on the petition date.

under 11 U.S.C. § 547(b),[4] and it follows that the avoided lien

is preserved for the benefit of the estate.  11 U.S.C. § 551.

Although Wachovia's answer to the complaint did not concede this

issue, and Wachovia attempted to muddy the waters as to this

issue in opposing White's motion for summary judgment, Wachovia

ultimately failed to present a genuine issue regarding the

avoidability of the granting of the security interest.

A

Wachovia presented no evidence to rebut White's showing of

avoidability.  At the hearing on the cross-motions for summary

judgment, counsel for Wachovia conceded on at least two occasions

that the granting of the security interest in Wyatt's truck

constituted an avoidable transfer within the meaning of 11 U.S.C.

---

[4]  Section 547(b) of 11 U.S.C. provides that:

the trustee may avoid any transfer of an interest of the
debtor in property--
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the
debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made--
    (A) on or within 90 days before the date of the filing
    of the petition; or,
    (B) between ninety days and one year before the date of
    the filing of the petition, if such creditor at the
    time of such transfer was an insider; and
(5) that enables such creditor to receive more than such
creditor would receive if --
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the
    extent provided by the provisions of this title.

§ 547(b).  Indeed, the parties treated White's asserted right to recover postpetition payments as the only remaining issue in this proceeding.  In light of the briefing on the issue and the representations made by counsel at the hearing, the court treats the elements of an avoidable transfer as having been established by White and conceded by Wachovia, and the dispute as having been narrowed to a question of whether White is entitled to recover postpetition payments in light of the avoidable transfer.

At the conclusion of the hearing, however, when the court indicated that it would likely grant summary judgment in favor of White and permit his recovery of postpetition payments made by Wyatt to Wachovia, counsel for Wachovia stated that Wachovia intended to pursue an equitable subrogation defense as to the avoidability of the lien.  Although Wachovia asserted the defense in its answer to the complaint, Wachovia did not raise equitable subrogation as a defense in its opposition to White's motion for summary judgment.

White's motion sought an adjudication that he was entitled to recover the payments, which required a predicate finding that the lien was avoidable, and any issue of equitable subrogation ought to have been raised in opposition to the motion for summary judgment.  For that reason, and for reasons stated at the hearing, Wachovia has forfeited its equitable subrogation defense, and, in any event, it failed to plead a proper equitable

8

subrogation defense.[5]

In arguing that Wachovia should nevertheless be permitted to advance its equitable subrogation defense, counsel for Wachovia notes that discovery was stayed pending the resolution of the parties' cross-motions for summary judgment, and that Wachovia ought not be barred from pursuing its equitable subrogation defense until it has had a fair opportunity to take discovery. Had Wachovia deemed it necessary to take discovery to adequately assert defenses to White's motion, however, it should have sought leave to do so rather than waiting until after the motion had been fully briefed and brought before the court for decision.

---

[5] What Wachovia's answer pled in this regard was that it "is entitled to be placed in the shoes of the prior lienholder under the doctrine of equitable subrogation." This sort of conclusory allegation does not pass pleading standards. The only prior lienholder Wachovia has identified is Pohanka. But Pohanka held the same lien that Wachovia holds: it would fare no better than Wachovia with respect to the avoidability of the lien. At the hearing on the motions, Wachovia suggested that Pohanka may have had floor financing in place such that there was a lien on Pohanka's ownership of the truck prior to Pohanka's selling the truck to Wyatt. Equitable subrogation would not apply to permit Wachovia to step into the shoes of that earlier lienholder as that lienholder never had a lien on the debtor's ownership of the truck. If Pohanka used Wyatt's payment to it to pay off the lien against Pohanka's ownership of the truck, that would not constitute a refinancing of the lien against even *Pohanka's ownership* of the truck: Pohanka parted with ownership of the truck upon selling it to Wyatt. As against creditors of Wyatt, the lien on Pohanka's prior ownership of the truck is irrelevant. Pohanka's lien (which was assigned to Wachovia) ran against *Wyatt's ownership* of the truck against which ownership there was no prior lien, and accordingly there is no earlier lien on such ownership to which Pohanka (or Wachovia as Pohanka's successor) could be subrogated.

Wachovia failed to file an affidavit under Fed. R. Civ. P. 56(f)
presenting reasons why it was unable to present by affidavit
facts essential to justifying its opposition to White's motion
for summary judgment.

B

By receiving the security interest, Wachovia received more
than it would have received if the security interest had not been
transferred and Wachovia had instead received payment on Wyatt's
indebtedness only to the extent provided by the Bankruptcy Code.
This was established by the file in this bankruptcy case (namely,
the timely proofs of claims on file; Wyatt's schedules, executed
under penalty of perjury, reflecting Wyatt's non-exempt property;
and White's filing of only this adversary proceeding).  The court
takes judicial notice of that file in assaying White's statement
of material facts not in genuine dispute.  In its papers (see
Dkt. No. 33), Wachovia contends that there is a genuine dispute
as to this issue, but Wachovia did not otherwise develop this
argument.  In his reply (Dkt. No. 34), White attached a
declaration under penalty of perjury explaining what the court's
file already showed: that the allowed filed proofs of claim in
this case exceed $15,000 and do not include any claim by
Wachovia; that there are no non-exempt assets other than the
anticipated proceeds of this cause of action; and that because
the allowed filed proofs of claim in this case exceed $15,000, by

receiving the security interest, Wachovia received more than it
would have received if the security interest had not been
transferred and Wachovia had instead received payment on Wyatt's
indebtedness only to the extent provided by the Code.  White
explains that he did not previously provide evidentiary support
as to this element of a § 547 avoidance action because he
considered it to be a reasonable inference drawn from the
undisputed facts.  Wachovia did not rebut White's declaration,
and did not otherwise pursue the issue at the hearing on the
cross-motions.

IV

It having been established that White is entitled to avoid
and preserve the lien for the benefit of the estate, the only
question remaining is whether White is entitled to seek a
monetary judgment from Wachovia for postpetition payments made by
Wyatt to Wachovia.  As this court observed in *McCarthy v. Bank of
America (In re Howell)*, Adv. Pro. No. 02-10017 (Bankr. D.D.C.
Jan. 27, 2003):

> The avoided lien becomes property of the estate.
> 11 U.S.C. § 541(a)(7).  Postpetition payments may be
> recovered as proceeds of the lien if the payments were
> intended by the debtor to reduce the amount of debt
> secured by the lien (as opposed to voluntary payments
> that the debtor would have made to the bank regardless
> of the status of its lien).  11 U.S.C. § 541(a)(6).
> In light of the automatic stay of § 362(a) and the
> discharge injunction of § 524(a), payments would be
> required to avoid enforcement of the creditor's in rem
> claim, but would not be required to avoid enforcement
> of the creditor's in personam claim.  Presumably, a

11

> debtor's payments to a creditor with whom the schedules
> do not reveal any familial connection with the debtor,
> are made on account of the still extant in rem
> obligation.  Consequently, any postpetition payments
> that have been paid by the debtor to the bank should be
> treated as payments of the in rem claim.

*Id.* at 7.  Although this conclusion seems obvious, intervening

decisions have reached a different conclusion, and, accordingly,

I explain this conclusion at greater length below.

A

Even disregarding Wyatt's affidavit, the only reasonable

inference supported by the record in the bankruptcy case is that

the postpetition payments were made on account of the lien.  This

stems from Wyatt's and Wachovia's rights under the Bankruptcy

Code, and supports the legal conclusion that the postpetition

payments to Wachovia were proceeds of its lien, and that White,

having avoided the lien and preserved it for the benefit of the

estate, is entitled to recover those payments as proceeds of the

lien.

Wyatt commenced his bankruptcy case on August 16, 2004.  The

meeting of creditors, at which Wyatt was required to appear and

be examined under 11 U.S.C. § 343, was set for September 22,

2004.  White determined that there might be assets available for

distribution to creditors, and on October 7, 2004, less than two

months after the case commenced, White filed a request for the

clerk to issue notice of a deadline for filing claims in the

case.  On October 20, 2004, he filed an application to employ an

12

attorney to assist him in pursuing an avoidance action against
Wachovia as the holder of the lien on Wyatt's truck.  On October
28, 204, White commenced this adversary proceeding against
Wachovia.

Wachovia has been barred since the bankruptcy case
commenced, and now is permanently barred, from acting to collect
its claim against Wyatt as a personal obligation of Wyatt.  The
commencement of the bankruptcy case gave rise to an automatic
stay under 11 U.S.C. § 362(a) which barred Wachovia's taking any
act to collect the debt.[6]  Wachovia never sought relief from the
automatic stay to enforce its lien against Wyatt's truck.
Wachovia may or may not have been entitled to declare a default
based on Wyatt's having filed a bankruptcy case.[7]  Regardless,
Wachovia undoubtedly felt that it would fare better if Wyatt
continued to make payments, thereby relieving Wachovia of the
costs of repossession and of the risk that a repossession sale

---

[6]  The amendments to the Bankruptcy Code made in 2005 did
not apply to this case, which was commenced in 2004.
Accordingly, 11 U.S.C. § 521(a)(6), a provision added by those
amendments, did not apply in this case.  Even if that provision
had applied, and had resulted in lifting the automatic stay to
permit Wachovia to enforce its lien, it would not have authorized
Wachovia to collect the debt as a personal obligation of Wyatt.
The only collection would have been pursuant to Wachovia's *in rem*
lien rights.

[7]  *See In re Brown*, 2009 WL 150630, at *2 n.3 (Bankr. D.D.C.
Jan. 21, 2009).

13

might not pay the debt in full.[8]

Pursuant to 11 U.S.C. § 362(c)(2), the entry of Wyatt's
discharge under 11 U.S.C. § 727(a) on December 3, 2004,
terminated the automatic stay with respect to acts against Wyatt,
but it gave rise to an injunction under 11 U.S.C. § 524(a)(2)
against any act to collect Wachovia's claim as a personal
liability of Wyatt.  The discharge injunction did not bar
Wachovia's *in rem* right to enforce its lien against the truck.
*Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).

The automatic stay still continued to bar Wachovia from
repossessing the truck because it remained property of the
estate.  11 U.S.C. § 362(c)(1).  If Wyatt failed to make
postpetition payments, that would have given Wachovia (or White
upon avoiding Wachovia's lien) the right to declare a monetary
default incident to its *in rem* rights, and provided grounds for
seeking relief from the automatic stay.  Wyatt, who wished to
retain the truck, as evidenced by his later purchase of the truck
from White free and clear of Wachovia's lien, continued to make
postpetition payments, thereby avoiding a monetary default being

---

[8] Moreover, Wachovia was the subject of White's avoidance
action soon after the bankruptcy case commenced, and probably
recognized that White would have grounds to oppose a lifting of
the automatic stay.  White could have opposed a motion for relief
from the automatic stay by arguing that repossession would
adversely affect White who, upon avoiding the lien, would fare
better by looking to Wyatt's postpetition payments instead of the
proceeds of a repossession sale.

declared by Wachovia as the lienholder.  From Wyatt's
perspective, it did not matter who the lienholder was (either
Wachovia or White): either way he wished to continue making
payments in order that no right to declare a monetary default
would arise and lead to repossession.

Under *Dewsnup v. Timm*, 502 U.S. 410 (1992), a lien passes
through a case under chapter 7 of the Bankruptcy Code unaffected,
and this gives the lienholder all of its rights to enforce its
lien for the full amount of the debt it secures, *regardless of
the value of the collateral on the petition date*.  A debtor is
not permitted to "strip down" the lien of an undersecured
lienholder to the value of the collateral as of the petition
date.  If the lienholder was undersecured on the petition date,
but the collateral, such as a debtor's home, increases in value
over the years, the lienholder is able in the event of default to
foreclose on the collateral and to apply all of the proceeds
towards satisfaction of its claim even if the proceeds exceed the
value of the collateral as of the petition date.

Even if the collateral does not increase in value, the
retention under *Dewsnup* of a lien for the full amount of the debt
has the consequence that if the debtor wishes to retain the
collateral, and to prevent a lien-enforcement sale of the
collateral, the lienholder can insist that the debtor must pay
the full amount of the debt in accordance with the payment

15

obligations secured by its lien.  In the case of a lien on a
motor vehicle, this means that the rights preserved by *Dewsnup*
include the lienholder's right to insist on the debtor's keeping
payments current in order for the debtor to prevent the
lienholder from repossessing the vehicle based on a default in
payment.  As the successor to Wachovia's rights as a lienholder,
White succeeds to that benefit of being a lienholder.

Whether a debtor deems the collateral to be worth the outlay
of payments necessary to avoid repossession is up to the debtor,
and a debtor may be willing to pay more than what the collateral
would fetch upon a sale on the petition date.  Accordingly, a
lienholder may realize, by reason of its lien rights, more than
the sale value of the collateral as of the petition date.  That
the debtor's postpetition payments may have exceeded the petition
date value of the collateral does not demonstrate that the
debtor's payments were not on account of the lien.

Under 11 U.S.C. § 524(f), a debtor may voluntarily repay a
debt without reaffirming the debt, but the record suggests no
reason why Wyatt would have been motivated to make voluntary
payments to Wachovia of the debt aside from preventing a
repossession of the truck based on a default in making payments.
Wyatt had no obligation either during the pendency of the case or
after receipt of his discharge to pay Wachovia other than
pursuant to Wachovia's *in rem* rights arising because it held a

16

lien on the truck.[9]  Moreover, there is no familial relationship

between Wyatt and Wachovia, a corporation, that would have led

Wyatt voluntarily to pay Wachovia other than by reason of

Wachovia's *in rem* rights as a lienholder.

There simply is no plausible reason why Wyatt would have

continued to pay Wachovia postpetition had Wachovia had no lien.

The postpetition payments were on account of the lien.  To

paraphrase White's counsel's observation at the oral argument of

the motions, when you ask a debtor why she continued to make

payments on a car after filing bankruptcy, she looks at you like

you are the man in the moon: the reason is obvious, namely, to

pay off the lien to keep the car.

B

Wachovia's position would require this court to wear

blinders and disregard the reality that once a bankruptcy

intervenes and bars a creditor from pursuing collection of a debt

as a personal liability of the debtor, that creditor's lien

securing payment of the debt can prompt payment of the full

---

[9]  Wachovia does not contend that the debt was procured by
fraud or was otherwise nondischargeable under 11 U.S.C. § 523.
In any event, the time for Wachovia to file a complaint regarding
nondischargeability under 11 U.S.C. § 523(c) and Fed. R. Bankr.
P. 4007(b) expired on November 21, 2004.  After that date, Fed.
R. Bankr. P. 4007(c) barred Wachovia's obtaining an extension of
the deadline.  Moreover, the time to reaffirm the debt (in order
to obligate Wyatt to repay the debt to Wachovia despite Wyatt's
discharge) expired under 11 U.S.C. § 524(c)(1) on December 3,
2004, when Wyatt received his discharge.

17

amount of the debt even though the collateral is worth far less
than the amount of the debt.  It is well known that in order to
retain ownership of the collateral, a debtor may elect to pay
such a debt in full because of the lien that remains enforceable
against the collateral.

Upon Wachovia's lien being avoided, the lien was preserved
for the benefit of the estate pursuant to 11 U.S.C. § 551.  By
reason of § 551, White stepped by way of subrogation into the
shoes of Wachovia with respect to its lien rights.  *See Taubel-
Scott-Kitzmiller Co. v. Fox*, 264 U.S. 426, 436-37 (1924)
(subrogation is the process by which the preservation of the lien
was made available under a similar provision under the Bankruptcy
Act providing for preservation of an avoided lien for the benefit
of the estate).  The avoided lien (and payments prompted by that
lien, as proceeds of the lien) became property of the estate
pursuant to 11 U.S.C. § 541(a), which provides in relevant part:

> The commencement of a case under section 301 . . . of
> this title creates an estate.  Such estate is comprised
> of all the following property, wherever located **and by
> whomever held**:
>     . . .
>         (4) Any interest in property preserved for
>     the benefit of . . . the estate under section
>     . . . 551 of this title[; and]
>     . . .
>         (6) Proceeds . . . of . . . property of the
>     estate, except such as are earnings from services
>     performed by an individual debtor after the
>     commencement of the case.

[Emphasis added.]   As of the petition date, White is deemed to

18

have been in the shoes of Wachovia with respect to its *in rem* lien rights, and the lien and its proceeds are treated as property of the estate.

The lien rights to which White was subrogated included Wachovia's rights as a lienholder pursuant to *Dewsnup* (which, as previously noted, held that, with statutory exceptions of no relevance here, a creditor's lien remains enforceable after the intervention of a case under chapter 7 of the Bankruptcy Code for the full amount of the debt secured by the lien even if the debt exceeds the value of the collateral). Accordingly, White was subrogated to Wachovia's right to enforce the lien postpetition for the full amount of the debt regardless of the value of the truck (including the right to insist on monthly payments being made if Wyatt was to avoid the truck being repossessed).

The payments on the lien were proceeds of the lien within the meaning of § 541(a)(6), and a lien follows and can be enforced against the proceeds. *Phelps v. United States*, 421 U.S. 330, 334-35 (1975) (citing *Sheppard v. Taylor*, 5 Pet. 675, 710, 8 L.Ed. 269 (1831), and *Loeber v. Leininger*, 175 Ill. 484, 51 N.E. 703 (1898)). The term "proceeds" in § 541(a)(6) ought to be construed in a fashion advancing the purposes of that provision. It follows that the question of whether payments on account of a lien ought to be treated as proceeds of the lien is a question of federal law regardless of the label that state law places on such

19

payments.  *See United States v. National Bank of Commerce*, 472
U.S. 713, 727 (1985).  *National Bank* dealt with the question of
what is "property" of the taxpayer under the federal tax lien
statute, 26 U.S.C. § 6321, holding that this was a question of
federal law to be applied to rights a taxpayer had under state
law regardless of the label state law placed on those rights.
The reasoning of *National Bank* applies with equal force to the
question of whether postpetition payments on account of an
avoided lien constitute "proceeds" of property of the estate
under 11 U.S.C. § 541(a)(6).  The classification question is a
matter of federal law applied to rights created by state law.
The payments having been prompted by the lien, and the treatment
of the payments as constituting proceeds being necessary to place
the estate in the position it would enjoy had the lien been
avoided on the first day of the case, it readily follows that the
payments were "proceeds" of the lien within the meaning of

§ 541(a)(6).[10]

The result, which seems obvious, is that White is entitled
to recover those proceeds from Wachovia.  There are several
approaches that support that conclusion.  First, pursuant to his
rights under non-bankruptcy law as the postpetition holder of the
lien, White is entitled to recover the proceeds from Wachovia.

Second, White is entitled to recovery of the postpetition
payments under 11 U.S.C. § 550(a): the proceeds of the lien
(payments on account of the lien) are part and parcel of the
avoided lien, and without recovery of those proceeds White would
not obtain the full benefit of the lien that was avoided and

---

[10]   Even as a matter of state law labels, the payments on
account of the lien were "proceeds."  The District of Columbia
has adopted the Uniform Commercial Code, which provides that
"[p]roceeds includes whatever is received upon the sale,
exchange, collection, or other disposition of collateral or
proceeds," D.C. Code § 28:9-306, and I conclude that the term
"collection" as it is used in D.C. Code § 28:9-306 is reasonably
construed to include payment or liquidation of a secured
obligation.  As stated by the dissent in *Morris v. Vulcan
Chemical Credit Union (In re Rubia)*, 257 B.R. 324, 330 (B.A.P.
10th Cir.), aff'd, 23 Fed. Appx. 968, 2001 WL 1580933 (10th Cir.
Dec. 12, 2001), in construing an identical provision under Kansas
law:

    [T]he term "collection" in the context of a debt or
    claim may be defined as "payment or liquidation of it."
    *In re Hastie*, 2 F.3d 1042, 1045 (10th Cir. 1993).

Thus, to the extent Wyatt's payments to the truck lender were
intended to reduce the value of the lien secured by the truck,
those payments constitute proceeds of the avoided lien under the
District of Columbia definition of "proceeds" and are property of
the estate under § 541(a)(6) even if state law definitions of
"proceeds" apply to that term in § 541(a)(6).

preserved for the benefit of the estate, and, as explained later, Wachovia would obtain an unwarranted windfall in comparison to other holders of unsecured claims against the estate.

Third, such recovery is alternatively authorized pursuant to 11 U.S.C. § 542(a), the court's authority to direct turnover to a trustee of the actual proceeds (as property of the estate) or "the value of such property." *See Bohm v. Howard (In re Howard)*, 422 B.R. 568, 582 (Bankr. W.D. Pa. 2009). The payments were prompted by the lien and constituted proceeds of the lien (and hence property of the estate under § 541(a)(6)) upon being received by Wachovia.[11] Because Wachovia is the initial holder of lien proceeds that are property of the estate, 11 U.S.C. § 549 (dealing with postpetition transfers of estate property) is inapplicable, and Wachovia must turn over the value of the

---

[11] It matters not whether the proceeds of the lien received by Wachovia are still in its possession, as White would still be entitled under § 542(a) to recover "the value of such property." *See Beaman v. Vandeventer Black, LLP (In re Shearin)*, 224 F.3d 353, 356 (4th Cir. 2000); *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53, 55-56 (7th Cir. 1996); *Bailey v. Suhar (In re Bailey)*, 380 B.R. 486, 493 (B.A.P. 6th Cir. 2008); *In re Fleming*, 424 B.R. 795, 801-805 (Bankr. W.D. Mich. 2010). *But see Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423 (8th Cir. 2007).

22

proceeds to White pursuant to § 542(a).[12]

Even if Wyatt's transfer of non-estate funds to Wachovia prompted by the lien and giving rise to proceeds of the lien could somehow be viewed as a postpetition transfer of estate property governed by 11 U.S.C. § 549, the funds would still be recoverable by White.  No order authorized Wachovia to receive these proceeds of the lien, constituting property of the estate, and, accordingly, the transfers (if they could be viewed as transfers of property of the estate) would be avoidable under § 549, and recoverable by White under § 550(a).  *See West v. Hsu (In re Advanced Modular Power Systems, Inc.)*, 413 B.R. 643, 672-73 (Bankr. S.D. Tex. 2009).

C

White is not engaging in a double recovery barred by 11 U.S.C. § 550(d).  Instead, White's entitlement to both hold the avoided lien to enforce payment of the remaining balance of the unpaid debt and to recover a judgment for the postpetition payments Wachovia received flows from the necessity of assuring that the estate receives the full benefit of the lien.  This view

---

[12] Wyatt's postpetition earnings (non-estate property) may have been used to make the payments, but White has not contended that those earnings (in Wyatt's hands) were property of the estate.  Accordingly, this is not a claim that rests on avoiding a transfer of estate funds from a debtor, and instead is a case of the payments becoming proceeds of the avoided lien, and property of the estate, upon their receipt by Wachovia as payments on the *in rem* obligation.

is supported by the following observation made by the court in

*McCarthy v. Financial Freedom Sr. Funding Corp. (In re Early)*,

2008 WL 2073917, at *5 (Bankr. D.D.C. May 12, 2008):

> That a trustee may invoke § 550 if § 551 alone would
> not make the trustee whole is illustrated by *Seaver v.*
> *Mortgage Elec. Registr. Sys., Inc. ( In re Schwartz)*,
> 383 B.R. 119 (B.A.P. 8th Cir. 2008). There the debtor
> refinanced a prepetition mortgage postpetition through
> a loan from postpetition lenders. In the postpetition
> refinance, the holders of the prepetition mortgage
> received full payment of the obligation secured by that
> mortgage, and released the lien. The trustee avoided
> the prepetition mortgage as a preference under § 547.
> Because the postpetition lenders' mortgages still
> encumbered the property, the estate would not have been
> made whole by the mere avoidance of the prepetition
> lenders' mortgage. Accordingly, it was appropriate to
> grant the trustee a monetary recovery under § 550(a)
> against the entities that had held the prepetition
> mortgage. *Id.* at 126-27.

White's dual remedies are making the estate whole by assuring

that the estate receives all of the value inherent in the lien,

no different than when a trustee avoids the prepetition transfer

of and recovers a bond and also recovers postpetition interest

payments that were made on the bond.[13]

D

White's avoidance of the lien was delayed because the court

and the parties awaited the outcome of the *BMW* litigation in the

bankruptcy court, then the district court, and finally the court

of appeals.  Until the trustee in *BMW* prevailed in the court of

appeals, the prevailing interpretation of the law in this

district (both at the bankruptcy court and district court level)

was that Wachovia's lien was *not* avoidable.  Had the court of

appeals decision been the prevailing interpretation of the law

all along, White could have promptly avoided the lien and

commenced receiving Wyatt's payments on account of the lien.  He

---

[13]  As observed in 2 David G. Epstein, Steve H. Nickles &
James J. White, *Bankruptcy* § 6-80, at 206 (1992):

> In some cases, . . . nullifying a transfer and
> automatically including the avoided interest within the
> estate is not a complete remedy.  The transferee . . .
> may effectively control the property despite the
> avoidance and consequent negation of her legal claim to
> it.  In [this] and other circumstances in which the
> estate cannot easily or fully realize the value of the
> avoided interest, the trustee's further remedy is
> recovery, under section 550, from transferees and
> people who benefitted from the avoided transfer.

If White is not permitted to recover the postpetition payments
Wachovia received only by reason of the lien, Wachovia will have
been the beneficiary of the avoided lien to the extent of those
payments, and the estate will not have fully realized the value
of the avoided lien (which necessarily includes the value of
those payments prompted by the lien).

ought not fare worse because he had to wait for the *BMW* case to

reach the court of appeals and for the issuance of that court's

decision before he could avoid the lien.  The amount a trustee

recovers by reason of payments made on account of an avoided lien

ought not depend on whether the trustee avoids the lien close to

the petition date or at a much later date.  In either case, the

trustee is entitled to the payments arising postpetition by

reason of the lien.  To rule otherwise in this case would confer

an unjustified windfall on Wachovia in its only remaining status

of being an unsecured creditor, a benefit not enjoyed by other

unsecured creditors.

    The windfall is this.  Upon the avoidance of the lien and

the recovery of the postpetition payments, Wachovia will have a

non-priority[14] unsecured claim against the estate under 11 U.S.C.

§ 502(h) for the amount it was owed on the petition date, with

the claim (like other such unsecured claims) not being allowed as

a claim against the estate with respect to unmatured interest as

of the petition date.  11 U.S.C. § 502(b)(1).  It will then share

on a pro rata basis with other non-priority unsecured claims with

respect to distributions from the estate.  To permit it to retain

the postpetition payments would accord it a priority to which it

is not entitled, and bless its having collected postpetition

---

    [14]  Certain unsecured claims are accorded priority by 11
U.S.C. § 507 ahead of other unsecured claims that do not enjoy
any such priority.

interest that is not allowed on other non-priority claims.

E

The leading decision offering some support for Wachovia's
position, but which is distinguishable from this case, is
*Morrison v. St. John Nat's Bank (In Re Haberman)*, 516 F.3d 1207
(10th Cir. 2008), *aff'g* 347 B.R. 411 (B.A.P. 10th Cir. 2006),
*aff'g* 2004 WL 2035341 (Bankr. D. Kan. Apr 14, 2004).  In
*Haberman*, the Habermans, debtors in a case under chapter 7 of the
Bankruptcy Code, owned a car, which was subject to a security
interest in favor of a bank.  On the petition date, the debt
stood at $3,237.50, and the car's fair market value was $2,000.
The bankruptcy trustee pursued an adversary proceeding to avoid
the bank's lien under 11 U.S.C. § 544(a) and to preserve the lien
for the benefit of the estate under 11 U.S.C. § 551, and
eventually succeeded in that effort.  Pending the outcome of that
adversary proceeding, and pursuant to an agreement between the
trustee and the bank, payments on the debt secured by the lien
were made to the bank, with the trustee's entitlement to the
payments to be addressed later.  Prior to the conclusion of the
adversary proceeding, the Habermans paid the debt in full.  The
bankruptcy court then determined that the trustee was only
entitled to recover the value of the car.  The bankruptcy
appellate panel and the court of appeals, in turn, affirmed that
ruling.  The two *Haberman* appellate decisions utterly fail to

address what motivated the Habermans' making the postpetition payments.[15]  The decisions, in other words, fail to address whether the payments were motivated by the right of the bank as a lienholder (a right to which the trustee succeeded) to enforce the lien--to repossess the car and sell it at auction--if the debt was not paid in full, or by a right of the bank to collect the debt despite the debtors' bankruptcy case even if it had never possessed any lien rights.[16]  Finally, the decisions fail to address whether the payments were proceeds of the lien.

If that arose because the bankruptcy trustee in *Haberman* failed to raise these points or arose because the courts did not

---

[15]  They fail, for example, to address the issue of whether the debt remained a debt that the bank could collect from the Habermans despite the intervention of bankruptcy, namely, whether the debt was nondischargeable as to either debtor, whether the Habermans each received a discharge, and whether the debt was reaffirmed.

[16]  If this stemmed from a failure of the trustee to present evidence as to the issue of motivation, that failure would not be surprising.  An examination of the bankruptcy court's file reveals that the bankruptcy court had entered an order, which provided:

> In the event the trustee is successful in avoiding the lien of defendant Bank in the vehicle, all payments made post-petition will become property of the estate and the Bank will turnover [sic] the same to the trustee.  If the trustee is not successful, the same will be retained by the secured creditor.

The trustee understandably could have thought that this mooted the necessity of putting on evidence regarding the motivation of the Habermans in making the payments.

28

realize these points were an issue,[17] this case is different.
White *has* pressed these points, and the record establishes that
the intervention of bankruptcy prevented Wachovia from further
collecting the debt as a personal liability of Wyatt, that the
payments *were* made only on account of the lien, and that the
payments are thus proceeds of the lien.  Accordingly, *Haberman* is
distinguishable.

Nevertheless, *Haberman* sets forth dicta with which I must
respectfully disagree.  The court of appeals in *Haberman*
acknowledged that a trustee who avoids a lien preserved for the
benefit of the estate steps into a creditor's shoes with respect
to the avoided lien.  516 F.3d at 1210.  It noted that a "lien"
is defined by 11 U.S.C. §101(37) to be a "charge against or
interest in property to secure payment of a debt or performance
of an obligation." *Id.* at n.4.  The court of appeals then
observed that a trustee's rights pursuant to an avoided lien do
not include the creditor's right to receive contractual payments.
That observation is only partly correct.  When a trustee avoids a
lien that lien does *not* enable the trustee to enforce the
creditor's contractual right to payments as a personal liability

---

[17]  The trustee's brief in the court of appeals (2006 WL
3671774) did not clearly identify this as an issue, making only
passing reference to the fact that the Habermans had rescinded a
reaffirmation agreement, but not arguing that this demonstrated
that the payments were made on account of the lien, not on
account of the *in personam* obligation to the bank.  The bank did
not file a brief in the court of appeals.

of the debtor, but it *does* permit the trustee to enforce the creditor's right to receive contractual payments as an *in rem* obligation, including the right to insist on those payments being made as the price for the creditor's not selling the collateral at auction sale.

It is the right to receive payments that is secured by the lien. If (as here) it is the lien that prompts payments, the trustee as the new holder of the lien is entitled to recover those payments as proceeds of the lien. Plainly a trustee who avoids a lien and then continues to accept monthly payments (made by the debtor to prevent the trustee's declaring a default and selling the collateral as a lienholder) is entitled to those payments even if, upon the completion of those payments, the total of the payments the trustee received far exceeds the fair market value of the collateral on the petition date. Yet the reasoning of *Haberman* logically would bar the trustee's retaining payments made pursuant to the lien that exceed the fair market value of the collateral on the petition date. That makes no sense.

Moreover, it ought not matter whether the payments prompted by the lien are made *after* or *before* the lien is avoided. As observed by the dissent in *Rubia*, 257 B.R. at 329, without the point being questioned by the majority, the avoidance of a lien relates back to the filing date of the bankruptcy petition.

30

Whether the payments are made after or before the lien is
avoided, the payments (if they were prompted by the lien) are
proceeds of the lien, and the trustee ought to be entitled to
those proceeds of the lien.

The court of appeals in *Haberman* justified its reasoning
regarding contractual rights versus lien rights by pointing to
*Robinson v. Howard Bank (In re Kors)*, 819 F.2d 19, 23-24 (2d Cir.
1987), a decision which, when placed in proper perspective,
supports White.  *Kors* held that although a trustee avoided a
bank's lien, the trustee's avoidance powers did not extend to
avoiding for the benefit of the estate the bank's subordination
agreement with other creditors who agreed to subordinate their
liens to the bank's lien.  *Kors* held that "equipped with lien
creditor status under § 544(a)(1) and subrogation power under
§ 551, the trustee may preserve those rights and powers that a
lien creditor would have against the bankrupt under
[nonbankruptcy] law," and that "the trustee was vested only with
the rights the Bank had against [the bankrupt]," which did not
include the bank's rights under the subordination agreement with
other creditors.  819 F.2d at 24.  Accordingly, *Kors* stands for
the unremarkable proposition that the *in rem* rights of a trustee
as a holder of an avoided lien are limited to enforcing
performance of the underlying obligations whose performance the
lien secures, the means of enforcement being the inherent threat

of a foreclosure sale or, if that threat does not prompt
performance, an actual foreclosure sale.  The lesson of *Kors*
pertinent here is that so long as the lien remains upon the
collateral, that lien remains enforceable pursuant to the
lienor's *in rem* rights for whatever amount is owed pursuant to
the *in personam* obligation whose payment it secures (including
the right to sell the collateral if there is a default with
respect to the *in rem* right to performance as a condition to the
collateral not being sold).  Without the lien securing
performance of the payment obligations, it would be worthless.

So if the lien here had not been avoidable, Wachovia could
have insisted that as the price of its not repossessing the
truck, Wyatt would be required to make his postpetition monthly
payments as set forth in the contract whose obligations were
secured by the lien.  If Wyatt made all of the required monthly
payments, and they far exceeded the value of the collateral,
Wachovia would not be precluded from retaining the payments even
though it was barred by the bankruptcy case from collecting the
note obligation as a personal liability of Wyatt.

The court of appeals in *Haberman* assumes that a trustee's
recovery pursuant to an avoided lien is limited by what the
collateral would have fetched had a sale been made pursuant to
the lien on the petition date.  That disregards the reality that
often a debtor does not default in making car note payments

32

postpetition, and ends up making payments *on account of the lien*
worth far more than the value of the collateral.  The court of
appeals reasoned that:

> [H]ad the Habermans defaulted on their loan prior to
> bankruptcy, the only property the Bank could've claimed
> (assuming a perfected security interest) was the Trans
> Am, and then only up to the value of the loan.  Given
> that the Trans Am happened to be worth less than the
> loan balance, the Bank would've been left with a mere
> unsecured (if perhaps actionable) contractual promise
> for the difference.  So, while Congress provided in
> Section 551 that the Trustee may take for the estate
> the value of the Bank's security interest in the Trans
> Am, the power to take "liens" and "transfers" does not
> also embrace a right to deprive the Bank of a separate
> contractual right to be repaid for its debt above and
> beyond the value of the security interest.

516 F.3d at 1211-1212.  That observation, echoing a similar
observation by the bankruptcy appellate panel,[18] disregards two
points.

First, the Habermans did *not* default on their loan payments:
they continued (as did Wyatt here) to make the monthly payments
postpetition, and the avoided lien had, by reason of the
definition in 11 U.S.C. § 101(37), secured those payments of the
debt, and continued as those payments were made to secure the

---

[18] The bankruptcy appellate panel reasoned that although a
creditor holding a lien could recover more than the value of the
collateral if the debtor elects to keep the collateral and pay
the debt in full, "a creditor under that scenario could not rely
on its lien on the collateral to ensure full recovery of the debt
unless the collateral is worth at least as much as the debt."
347 B.R. at 415.  What the panel failed to acknowledge is that if
the payments are made only to keep the collateral from being
repossessed, the payments are necessarily made on account of the
lienor's lien rights and constitute proceeds of that lien.

payment of the remaining balance of the debt, without regard to the value of the collateral. Sure, if the Habermans *had* defaulted and the bank had sold the Trans Am at an auction sale, the trustee's avoidance powers would not have included recovering anything other than the amount the bank realized on the auction sale, and the trustee would not have succeeded as well to the bank's deficiency claim. But that is not what happened, and it does not demonstrate that when payments *are* made on account of a lien postpetition it is inappropriate to treat those payments as proceeds of the lien.

Second, the court of appeals assumed that the trustee's recovery of postpetition payments in excess of the value of the collateral would represent proceeds of the bank's *in personam* right to collect the debt as a personal obligation of the Habermans. The court, however, failed to explain how the bank, once bankruptcy intervened, could have any enforceable right to be repaid for the debt other than pursuant to its *in rem* rights as a lienholder, rights that obviously would prompt payments by the Habermans if they wished to retain the Trans Am and avoid a

34

monetary default leading to an auction sale.[19]

The court of appeals in Haberman reasoned that *Dewsnup* does not apply to a trustee who has avoided a lien.  This reasoning disregards the holding of *Taubel-Scott-Kitzmiller Co., Inc. v. Fox* that upon avoidance of a lien, a trustee steps by way of subrogation into the shoes of the lienholder with respect to its lien rights.  The reasoning also likely comes as a surprise to many a trustee who has avoided a lien and then has collected payments pursuant to that lien far in excess of the value of the collateral.  Under the reasoning of *Haberman*, such a trustee would not be entitled to retain the payments to the extent that they exceed the fair market value of the collateral on the petition date.  That makes no sense.  Under the controlling authority of *Taubel-Scott-Kitzmiller Co., Inc. v. Fox*, the avoided lien, in the hands of the bankruptcy trustee, enjoys the same right it enjoyed in the hands of the prior lienholder to be

---

[19]  As noted previously, that distinguishes *Haberman* from this case: the trustee in *Haberman* apparently failed to argue that (and the court of appeals failed to inquire whether) the Habermans continued to make their monthly payments only because of the bank's *in rem* right under the lien to insist upon payment of the debt as the price for the Habermans' avoiding repossession of the Trans Am, a lien right, which remained intact despite the intervention of bankruptcy.  In this case, White *has* demonstrated that Wyatt continued to make his monthly payments only because of the *in rem* rights that existed pursuant to Wachovia's lien, and the record demonstrates that the intervention of bankruptcy barred Wachovia's enforcing its *in personam* rights (and that such enforcement was eventually enjoined by the injunction arising from Wyatt's discharge).

enforced for the full amount of the debt regardless of the value of the collateral on the petition date.

One of the bases upon which the court of appeals in *Haberman* rested its conclusion that *Dewsnup* was inapplicable was that treating *Dewsnup* as conferring rights on a trustee holding an avoided lien would be inconsistent with pre-Code rules and practice. *Haberman*, 516 F.3d at 1213-14. But the decisions it cited as evidence of pre-Code rules and practice did not deal with the issue of postpetition payments on an avoided lien and the treatment of those payments as proceeds. Indeed, to quote one of the decisions cited by *Haberman* in that regard, an avoidable lien or other transfer of property "includes the giving or conveying anything of value,--anything which has debt-paying or debt-securing power." *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 443 (1901). An avoided lien's "debt-paying or debt-securing power" includes the power to prompt payment of the debt secured by the lien (lest the collateral be sold upon default at an auction sale) even if the collateral was worth less on the petition date than the amount of the debt.

Indeed, *Haberman* overlooks an important goal of bankruptcy law enunciated in *Pirie*: "equality of distribution among [creditors] of the property of the bankrupt," *Pirie*, 182 U.S. at 449, which remains "the prime bankruptcy policy" under the Bankruptcy Code. *Union Bank v. Wolas*, 502 U.S. 151, 161 (1991).

36

Yet under the dicta in *Haberman*, a lender whose lien is avoided
is allowed to retain postpetition payments prompted by the lien
to the extent that they exceed the value of the collateral on the
petition date.  Because the lender is rendered the holder of an
unsecured claim by reason of the avoidance of its lien, those
retained postpetition payments necessarily are applied to the
unsecured claim, whereas  other creditors holding unsecured
claims are not receiving any such postpetition payments (other
than what they receive *pro rata* from the estate).  That is a
windfall condemned by the policy of equality of distribution.

For all of these reasons, I find *Haberman* unpersuasive.[20]

F

Wachovia also relies on the Tenth Circuit bankruptcy
appellate panel's decision in the case of *Morris v. Vulcan*
*Chemical Credit Union (In re Rubia)*, 257 B.R. 324 (B.A.P. 10th
Cir.), *aff'd*, 23 Fed. Appx. 968, 2001 WL 1580933 (10th Cir. Dec.
12, 2001). Like *Haberman*, *Rubia* is distinguishable from this
case. In *Rubia*, the debtor continued to make postpetition
payments to the bank on a prepetition loan secured by the
debtor's vehicle. As of the petition date, the balance due on

---

[20] Even if this court were to follow *Haberman*, application
of that decision's holding to this case would not bar the court
from permitting White to recover postpetition payments made by
Wyatt to Wachovia in an amount designed to assure that he
recovers the value of the lien as of the petition date. The
parties have not established the value of the truck as of the
petition date, making it inappropriate to award summary judgment
in favor of White under this theory.

*Haberman* did not address the issue of prejudgment interest
on the trustee's recovery of the value of the collateral on the
petition date, apparently because the trustee did not raise that
issue. Even if a trustee, in recovering postpetition payments,
ought only to recover payments equal to the value of the
collateral on the petition date, a dollar on the petition date is
worth more than a dollar paid at a later date. If a court
follows *Haberman*, the trustee ought to recover as well
postpetition-prejudgment interest on the value of the collateral
on the petition date at a rate determined by the bankruptcy
judge. The issues of the entitlement to postpetition-prejudgment
interest and the appropriate rate of such interest disappear if,
as I conclude, *Haberman* ought not be followed and the trustee is
entitled to recover as proceeds of the lien all of the
postpetition payments secured by the lien and prompted only by
the lien. Those necessarily include interest payments that take
into account the time value of money.

the loan was $10,440.00, and the debtor made postpetition

payments to the creditor totaling $1,136.00.  Pursuant to an

agreed order between the creditor and the chapter 7 trustee, the

trustee avoided and preserved the lien for the benefit of the

estate.  The trustee then filed a complaint seeking turnover of

the postpetition payments made by the debtor to the bank.  The

bankruptcy court dismissed the complaint, concluding that the

trustee was not entitled to recover the payments because they

were made from the debtor's postpetition earnings.  On appeal,

the bankruptcy appellate panel agreed with the bankruptcy court

that the trustee could not recover the postpetition payments, but

not because they were made from the debtor's postpetition

earnings, but rather because it viewed the trustee as having

limited rights incident to the avoidance of a lien.

The panel in *Rubia* concluded that although the trustee

preserved the lien for the benefit of the estate under § 551,

that interest did not give the trustee the right to collect the

related debt from the debtor postpetition.  Rather, according to

the *Rubia* panel, although the trustee's avoidance of the lien

prevented the creditor from looking to the vehicle to satisfy its

claim, the creditor was nevertheless left with an unsecured claim

against the debtor's estate for the entire balance of the debt,

and the postpetition payments from the debtor to the creditor

simply reduced the amount of the creditor's unsecured claim

39

against the estate.

The majority decision in *Rubia* noted that if the debtor's debt to the credit union had not been discharged, the debtor's postpetition payments to the credit union were merely made towards satisfaction of that debt.  257 B.R. at 327.  There thus appears to have been a failure of proof by the trustee as to why the debtor elected to treat this unsecured creditor differently than other unsecured creditors.[21]  This is made evident by the majority's statement that the lien preserved under § 551 "[did] not give the Trustee the right to collect [the credit union's claim] from the debtor postpetition.  *See In re Closson*, 100 B.R. 345 (Bankr. S.D. Ohio 1989)."  The majority's reliance on *Closson* is telling.  In *Closson*, unlike here, the debtor had reaffirmed

---

[21]  In affirming the bankruptcy appellate panel, the unpublished opinion issued by the court of appeals makes reference to the debtor's trial testimony, in which he apparently indicated that he intended the postpetition payments to reduce the amount of the car lien.  *See Rubia*, 2001 WL 1580933 (10th Cir. Dec. 12, 2001) (not selected for publication in the Federal Reporter).  He also testified, however, that he continued to pay the bank on another unsecured loan, and told the credit union that he intended to pay the credit union without distinguishing between his secured and unsecured loans.  It is unclear what, if any, significance was given to this testimony by the trial court, and I mention it here only to note that the bank could theoretically have argued that the debtor intended to pay his debts in full, and that the payments to the credit union were in addition to the amounts that, on the petition date, could be recovered from the collateral.  In that regard, the trustee put on no proof regarding the value of the collateral.  Regardless, in *this* case it is unnecessary to speculate about Wyatt's intentions because Wyatt's unrebutted affidavit testimony establishes that the postpetition payments were intended to reduce the lien on Wyatt's truck.

his debt with a credit union, and pursuant to the terms of the
original contract with the debtor and the reaffirmation
agreement, the credit union received postpetition payments.[22]
Accordingly, the *Rubia* majority can be viewed as holding that the
trustee failed to prove that the postpetition payments had not
been paid for some reason (as in *Closson*) other than the credit
union's lien rights.[23]    Indeed, the *Rubia* majority treated the
payments to the credit union as reducing only the amount of the
unsecured claim held by the credit union and as not reducing the
amount of the trustee's claim against the collateral.    257 B.R.

---

[22]    In *Closson*, the court rested its decision on the
trustee's failure to point to any authority in the Bankruptcy
Code for recovery of the postpetition payments.    The trustee did
not point to 11 U.S.C. § 541(a)(6) as a statutory basis upon
which to recover the postpetition payments.    Accordingly, *Closson*
is not authority rejecting the utilization of § 541(a)(6) as a
basis for recovering postpetition payments when the debtor only
paid the debt to keep the collateral from being sold pursuant to
the lienor's *in rem* rights and had no reason to pay the debt as a
personal liability.

[23]    For example, the debtor may have had an intent to pay
the full amount of the debt, both the part secured by the value
of the collateral and the unsecured part.    If so, the record did
not demonstrate the value of the collateral, and the trustee's
claim failed as a matter of proof.

at 328 n.4.[24]  Here, in contrast, Wyatt clearly intended the
payments to reduce the amount of the secured debt.

Accordingly, *Rubia* is distinguishable.  Nevertheless, the
majority opinion in *Rubia* contains statements that are
fundamentally flawed.  First, it necessarily holds that the
payments to the credit union can not be treated as reducing the
amount of the secured debt.  258 B.R. at 327-28, and 328 n.4 (the
postpetition payments did not reduce the amount of the trustee's
lien claim "but rather only reduce the amount of [the creditor's]
unsecured claim against the estate").  This raises the prospect
that a debtor who makes payments to the creditor to reduce the
amount owed under the lien will pay the full amount owed to the
trustee (if a sale of the collateral fetches the full amount of
the debt) and may, additionally, make payments to the creditor,
thus paying more than the debt she was contractually obligated to
pay.  Congress did not likely intend such a result: the debtor
was only liable to pay the debt once.  It is no answer (as

---

[24]  Even the dissent recognized that the debtor could have
decided to make voluntary payments to the credit union on any
portion of its claim that was not secured by the value of the
collateral.  (Here that is not a possibility because Wyatt
intended all of the payments to be applied to reduce amounts
secured by the lien.)  The dissent reasoned that such a
possibility did not exist because it assumed that the collateral
must have been worth the entire amount of the debt.  257 B.R. at
330.  The dissent accordingly concluded that the payments
necessarily were on account of the lien.  The majority rejected
that assumption as speculation not supported by the record.  257
B.R. at 328 n.4.

suggested by the *Rubia* majority) that it is the debtor, and not
the trustee, who "may or may not have a cause of action against
[the creditor] for any postpetition payments that he made . . .
." 257 B.R. at 327. If the debtor intended the payments to
reduce the secured claim, the postpetition payments to the
secured creditor should be recoverable by the trustee, without
the debtor being put to the burden of recovering the payments.

Second, the majority states that "[t]he trustee has no right
to any payment made to [the credit union] on the debt, but rather
he only has rights in the Ranger up to the amount of [the credit
union's claim] on the petition date." 257 B.R. at 328 (footnote
omitted).[25] If, as seems implicit, this means that a trustee
never can pursue postpetition payments made to a creditor on
account of a lien that the trustee avoids, this is plainly wrong.
It ignores the reality regarding the payment-inducing power of a
lien (the power to induce payments lest the collateral be sold
pursuant to enforcement of the lien), and the consequence that
payments induced by the lien necessarily are proceeds of the lien
under § 541(a)(6) and hence property of the estate. If the *Rubia*
majority's view is followed, it leads a court always to treat
postpetition payments as not constituting proceeds of the lien

---

[25] The debt secured by a lien includes any amounts accruing
on the secured obligation after the petition date, and thus *Rubia*
is wrong in referring to the amount of the claim on the petition
date as a limiting factor. But that is a minor flaw compared to
the major flaw implicit in the quoted passage.

under § 541(a)(6) (because, under *Rubia*, postpetition payments to
the creditor must be treated as being on account of the
contractual obligation and not on account of the underlying
lien). *See Rubia*, 257 B.R. at 328 n.5.

Third, the majority rejected the dissent's conclusion that
payments on account of a lien are proceeds of the lien, reasoning
that payments are not collection of collateral under the Uniform
Commercial Code. *Id.* As explained earlier, such payments on
account of a lien are "proceeds" of the lien within the meaning
of § 541(a)(6) as a matter of *federal* law, and, in any event,
would be treated as proceeds of the lien even under *state* law.

Finally, the majority reasoned "that unsecured creditors
were not harmed and, in fact, were benefitted by the Postpetition
Payments because [the credit union's] unsecured debt has been
reduced." 257 B.R. at 329. This disregards the unjustified
windfall (discussed earlier) that arises when a lienor is allowed
to retain postpetition payments that are proceeds of the lien,
and defeats a prime goal of bankruptcy, equality of distribution
amongst creditors. Had the trustee recovered the postpetition
payments, the credit union would have been able to file an
unsecured claim against the estate under Fed. R. Bankr. P.
3002(c)(3), but it would share the disgorged payments only *pro
rata* with the other creditors. The creditors in *Rubia* did not
benefit from the trustee being denied recovery of the

44

postpetition payments.

G

Wachovia also places reliance on *Nazar v. North Amer.*
*Savings Bank FSB (In re Born)*, 357 B.R. 630 (B.A.P. 10th Cir.
2006), which limited a trustee's recovery of postpetition
payments (made to the lienor whose lien was avoided) to the value
of the collateral on the petition date. *Born* relied on the
flawed reasoning of the *Haberman* and *Rubia* decisions, and,
accordingly, it is equally unpersuasive.

V

Whatever postpetition payments a trustee is entitled to
recover as proceeds of a lien, the trustee would not obtain a
judgment for those payments until well after the payments were
made. Accordingly, a trustee additionally should recover
prejudgment interest on each recoverable payment from the date of
the payment. *See Webster v. Harris Corp. (In re NETtel Corp.,*
*Inc.)*, 327 B.R. 8, 13 n.8 (Bankr. D.D.C. 2005).

VI

In accordance with the foregoing, it is

ORDERED that White's motion for summary judgment is GRANTED,
and Wachovia's lien is avoided and preserved for the benefit of
the estate. It is further

ORDERED that a judgment will be awarded in favor of White
against Wachovia for all postpetition payments received by it

45

from Wyatt on the debt secured by the avoided lien, plus

prejudgment interest as to each postpetition payment to be

calculated from the date each payment was received, at the rate

dictated by *NETtel*, 327 B.R. at 13 n.8, or prejudgment interest

at a lower rate utilized as a matter of computational

convenience, or prejudgment interest as agreed by the parties.

It is further

ORDERED that White shall file a proposed judgment within 21

days after entry of this order, and Wachovia may file an

opposition to the proposed judgment's calculation of interest

within 21 days after filing of the proposed judgment.

[Signed and dated above.]

Copies to: Kevin R. McCarthy, Esq. (counsel for plaintiff);
William Rudow, Esq. (counsel for defendant); Office of United
States Trustee.